IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>BRADY BECK FANT,   )<br>)<br>Defendant.   ) | Case No. 4:25CR58 |

**DEFENDANT'S POSITION ON SENTENCING**

Brady Beck Fant, by counsel, offers his position with respect to sentencing factors. Mr. Fant has no objections to the presentence investigation report ("PSR").

Mr. Fant requests that this Court adopt the recommendation of the parties as set forth in the written Plea Agreement, ECF No. 20, and impose a sentence of 120 months, the mandatory minimum sentence, with a term of supervised release to follow.[1]

**Overview of Sentencing Request**

Mr. Fant needs counseling, supervision, and treatment. He respectfully requests the Court impose a sentence of 120 months of incarceration, which will accomplish the purposes set forth in 18 U.S.C. § 3553(a) without being "greater than necessary."

**I.   Sentencing Argument**

In determining the appropriate sentence in this case, the Court must consider the factors as set forth in 18 U.S.C. § 3553. The advisory guidelines are but one of the relevant considerations at sentencing. *Gall v. United States*, 552 U.S. 38, 50 (2007). In Mr. Fant's case, the advisory range recommends a sentence of 121 months to 151 months.

---

[1] In preparation for the sentencing, counsel discussed the plea agreement and the one month different between the guidelines and mandatory minimum. The parties agreed that 120 months was the appropriate request of the Court consistent with the plea agreement.

1

Mr. Fant's request for a sentence of 120 months followed by a period of supervision, per the parties' agreement, is justified by the factors discussed below.

### A. Nature and Circumstances of the Offense

Mr. Fant is before the Court to be sentenced for Coercion and Enticement of a Minor in violation of 18 U.S.C. § 2422(b). He committed this offense in 2020. Mr. Fant has admitted to the facts contained in the PSR and takes full responsibility for his conduct. PSR ¶¶ 11-21 (containing a verbatim recitation of the Statement of Facts and other relevant conduct). These events manifested during a period when Mr. Fant appeared to be at his lowest point in his life, reaching a personal breaking point before re-enlisting in the military.

Due to an investigation into the events of 2020, Mr. Fant, then an active member of the United States Army, was subjected to interrogation by the Army Criminal Investigations Department (ACID). Over the course of four hours, Mr. Fant confessed to the crime herein, as well as other conduct he committed as a minor. Immediately after his interrogation, he wrote a lengthy apology letter to all his victims and provided it to law enforcement.

When he participated in his PSR interview after admitting his guilt before this Court, Mr. Fant again expressed remorse for his actions. PSR ¶ 21. He knows there will be lifelong consequences for his conduct and agrees that serious consequences are appropriate.

By sentencing, Mr. Fant will have served approximately 6 months in jail.

### B. Mr. Fant's History and Characteristics

Brady Beck Fant, now 32 years old, has lived a challenging and disjointed life in which he has struggled to overcome his mother's mistakes and manipulation. His biological father was never a part of his life. It was Brady's adoptive father, Steven Fant, who was in his life growing up and who remains in his life now, supportive of him during this prosecution. Brady's mother,

Brenda Beck Longino, died in 2025, about a month before his arrest. Mrs. Longino and Steven Fant had two other children together, whom Mr. Brady was raised with and whom he considers to be his siblings.

Throughout his life, Brady's relationship with his mother worsened based on her decisions and attempts to control him and his siblings. The family moved from Atlanta, Texas to Texarkana, Arkansas when Brady was in middle school. The following year, his parents separated, and they finalized their divorce when Brady was in Eighth Grade. During the divorce proceedings, Brady learned that his mother had an extra marital affair in Atlanta, Texas that had eventually forced the family to "leave town." After the separation, Brady's parents split custody of him 50/50, but his time with his mother soon grew unbearable.

Only about a month after the divorce was finalized, Brady's mother remarried. Brady's new stepfather, Joe Hickey, was "a bit older" than his mother. Brady recalls that his mother and Mr. Hickey "fought all the time." To make matters worse, Brady recalls that his mother was an alcoholic. He states that the couple both drank, and his mom was a "loud" drunk. Although their fights were never physical in front of the children, Brady later learned that the couple had agreed never to have a physical fight "in front of the kids" and that his stepfather would hit his mother when they were alone. Despite that half-baked effort to spare the children, the fights left scars. Brady vividly remembers a time that his little sister got scared and ran into his brother's room because she "couldn't take the fighting." Brady always felt protective of his siblings, since he was the oldest. He tried taking his siblings to their dad's home in Texas to escape the fighting, but his mother stopped him.

Surmounting his chaotic home life, Brady graduated from high school, after which he briefly enrolled in college. He spent a semester at Henderson State University before transferring

3

to Texarkana College, where he hoped to major in history. Unfortunately, after his first semester, he experienced a car accident and could no longer afford tuition. The next year, Brady enlisted in the Navy, where he served for four years until he was honorably discharged in 2018. During his service, he was awarded several commendations. Brady takes great pride in his service.

After he left the Navy, Brady returned home to Texarkana, where the jobs he found did not offer the same level of responsibility or satisfaction—a correctional officer, a restaurant server. Looking for something more, he reenrolled at Texarkana College and obtained an HVAC certificate, maintaining a spot on the President's List for that year. He leveraged the skills he acquired into employment as an HVAC apprentice, a role he maintained until October 2021.

During this pandemic period, in 2020, Brady's mother divorced Mr. Hickey and married Jeff Longino. But Brady's relationship with his mother did not improve. Ever since he had returned home, his mother's behavior towards him worsened, with constant belittling and verbal abuse. He recalls her always telling him that "his late grandmother would be so disappointed in him for having left the Navy."

Brady describes his mother as "narcissistic, manipulative, controlling and a liar." He explained that none of the kids had a good relationship with her: "She would lie to us and try to control our lives." He says that he and his siblings suffered significant emotional and psychological abuse at her hands. He recalls her always going against their wishes and doing whatever she wanted, no matter how anyone else felt about it or how it impacted her children. For example, he remembers incidents in which she disregarded both of his siblings' wishes at their weddings, saying it was her right "as their mother." Because of her actions at their weddings, and her continued attempts at manipulation, Brady's siblings stopped talking to his mother. This made things even more difficult for Brady, as his mother would try and use him to get to his siblings or

try to turn them against each other. She would also use their stepfather's abuse as "leverage, by saying that she gets hit when they aren't there, and she has to go through a lot." Eventually, Brady recalled, "She would call and rant every day. I couldn't take it anymore."

In 2021, Brady decided he needed to get away. He decided to join the Army, primarily to get away from his mother's constant "emotional blackmail." He also appreciated that enlisted individuals were making better pay than when he was in the Navy. While in the Army, Brady was given supervisory responsibilities, and he earned additional commendations. He remained in the Army until his arrest on this offense.

Sadly, Brady's mother's abuse was not limited to her own children. Previously, she worked as a high school teacher, and she was arrested and charged with having an inappropriate relationship with a minor student. Brady recalls that his mother told him that "there were two sides to every story and that they are always going to side with the victim," and he didn't listen to what she had to say. He later learned that it wasn't just one student and that there were allegedly multiple students. Although Brady denies experienced sexual abuse, he recalls an instance when he was younger, before his mother married Mr. Hickey, when he was exiting the shower and his mother walked in on him while he was still naked. She inappropriately commented to him, "You're bigger than your father," and then she walked out. Brady didn't know how to take this, and he stated that it felt "weird." We cannot choose our parents, but one must wonder if Brady would be before the Court for sentencing had his mother made different choices while he was growing up.

Brady understands the pain his conduct has caused his family, and he hopes that his younger siblings, who have ceased contact with him, will someday find closure and may be open to forgiveness. Even with all his issues related to his mother and upbringings, Brady maintains the support of his maternal grandfather, Bill Beck. They talk often, and Mr. Beck tries to share

words of wisdom with Brady. He remains supportive, like Brady's adoptive father. Even though Brady's relationship with Steven Fant has been strained by this case, his father advised that, when needed, he will not abandon Brady.

### C. Need for Sentence Imposed Pursuant to 18 U.S.C. § 3553(a)(2)

Section 3553(a)(2) requires a sentencing court to impose a sentence that reflects the seriousness of the offense; promotes respect for the law; and provides just punishment, adequate deterrence, and necessary training.

1. <u>Seriousness of the Offense; Respect for the Law; Just Punishment</u>

Mr. Fant has expressed remorse and accepted responsibility for his criminal conduct. He was immediately cooperative with investigating agencies. In fact, Mr. Fant has shown more remorse and understanding of the seriousness of this matter than most. Almost immediately, he provided investigators with a handwritten apology letter addressed to those harmed by his conduct, and he admitted to more actions than those that were under investigation. This reflects his respect for the law and his willingness to accept the consequences of his actions. He knows this Court will impose a just punishment in the form of at least ten years in prison, as the law requires.

Like many with similar charges, Mr. Fant has a criminal history score of zero, which yields a criminal history category of I. He served honorably in the United States Navy, and while in the United States Army, remained compliant with authority and his orders. The offense and his impending term of imprisonment have turned his life, and the lives of many others, upside down. He is aware of the harm he has caused his family and society in general, and it weighs on him constantly. A ten-year term of imprisonment, which is a lengthy sentence for anyone and especially someone like Mr. Fant who has never been to prison, is more than sufficient to promote respect

for the law and justly punish Mr. Fant. It also adequately reflects the seriousness of his offense conduct.

    2.  <u>Adequate Deterrence; Training and Rehabilitation</u>

The requested sentence of ten years will provide adequate deterrence. There are several factors supporting the conclusion that Mr. Fant presents a low risk: his general compliance with the law, his age upon release, and his desire and ability to participate in rehabilitative programming and treatment.

Furthermore, the fact that Mr. Fant has no criminal history points indicates he presents a substantially reduced risk of recidivism. *See* United States Sentencing Commission, *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders*, at 14 (March 2017) ("Overall, an offender's total criminal history score is a strong predictor of recidivism. Rearrest rates range from a low of 30.2 percent of offenders with zero criminal history points to a high of 85.7 percent for offenders with 15 or more criminal history points."). In addition, his recidivism risk is further ameliorated because of his healthy support network. For these reasons, the requested term of incarceration is more than adequate to provide deterrence and achieve the other goals set forth in 18 U.S.C. § 3553(a)(2).

Significantly, Mr. Fant this case already has had a tremendous impact on Mr. Fant. Almost a year elapsed between the time he was interrogated and the time of his arrest. Within that year, Mr. Fant sought help on his own. First, he sought mental health treatment from the Fourt Eustis Behavioral Health Clinic. Then, he turned to Sex Addicts Anonymous (SAA), where he attended weekly meetings. His sponsor with SAA, Fred Lumb, and Jeff Khoury, a supportive member of SAA, share their experiences with Mr. Fant in the attached letters. Exh. 1A-1B, Letters of Support.

7

Lastly, scholarly literature and research on deterrence further support the requested sentence of ten years. Research indicates that increases in the *severity* of punishment are far less important to producing deterrent effects than the *certainty* of punishment (if severity is relevant at all). *See* Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, 1. In alignment with the scholarly consensus that "awareness of potentially severe sanctions does not produce less crime[,]" Mirko Bagaric, *A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less Is More When It Comes to Punishing Criminals*, 62 Buff. L. Rev. 1159, 1203 (2014), a sentence beyond the mandatory minimum in this case is not necessary to achieve deterrence.

  3. <u>Collateral Consequences</u>

Mr. Fant will experience several collateral consequences because of his conviction. The stigma of a felony conviction – and particularly a conviction for a sex offense – is more intrusive and pervasive today than ever before due to the availability of information on the internet. *See generally* Wayne A. Logan, *Informal Collateral Consequences*, 88 Washington L. Rev. 1103 (2013) ("Today, convict status serves as a perpetual badge of infamy, even serving to impugn reputation beyond the grave.").

Mr. Fant will be branded publicly as a sex offender, a status that will place him at the margins of society for the rest of his life. *See Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) ("We can hardly conceive of a state's action bearing more 'stigmatizing consequences' than the labeling of a [person] as a sex offender."); *see also Smith v. Doe*, 538 U.S. 84, 115 (2003) (Ginsburg, J., *dissenting*) (describing the "profound humiliation and community-wide ostracism" that attends sex offender community notification). The First Circuit, in *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012), aptly noted that "[s]ometimes [courts do not] fully recognize the

anguish and the penalty and the burden that persons face when called to account, as these men are, for the wrong that they committed."

Mr. Fant will suffer the consequences of this conviction for the rest of his life, no matter the term of incarceration he serves. *See, e.g.*, *United States v. Mateo*, 299 F. Supp. 2d 201 (S.D.N.Y. 2004) ("[T]here is more to the concept of just punishment and deterrence of the particular individual than the temporal and physical hardships imposed by a sentence as measured by the length of time in prison pre-specified by a guidelines range. In fact, beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement…."). His offense of conviction carries an inescapable stigma. *See, e.g., United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (affirming on plain error review district court's finding that the collateral consequences of defendant's child pornography conviction should factor into its analysis of what constitutes "just punishment," including "the interruption of defendant's education and employment, the dissolution of his engagement, *and the stigma attached to this specific offense*.") (emphasis added).

Mr. Fant will also be subject to a registration requirement, which is a particularly oppressive collateral consequence. No matter where he lives or works, the Sex Offender Notification Act ("SORNA") will remain in place past any time of supervised release and well past the time the sentencing factors are satisfied.

Finally, Mr. Fant is in the process of separation from the United States Army. Courts have found collateral consequences like the loss of a career to be highly mitigating. *See, e.g.*, *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (affirming below guideline sentence for child

9

pornography defendant based in part on fact that defendant "lost his teaching certificate and state pension as a result of his conduct. Consideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for 'just punishment' and 'adequate deterrence.'")

## CONCLUSION

For the foregoing reasons, Mr. Fant respectfully requests a sentence of one hundred twenty (120) months of incarceration, as such a sentence would be sufficient, but not greater than necessary, to accomplish the goals set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

BRADY BECK FANT

By:_____/s/_____
Suzanne V. Suher Katchmar
Virginia State Bar No. 37387
Attorney for Brady Beck Fant
Assistant Federal Public Defender
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
Telephone: (757) 457-0890
Facsimile: (757) 457-0880
suzanne_katchmar@fd.org

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 16th day of February 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

      I FURTHER CERTIFY that I will send by electronic mail the foregoing document to the following non-filing user:

      Kalyn M. Monreal
      United States Probation Officer
      United States Probation Office
      600 Granby Street, Suite 230
      Norfolk, Virginia 23510

                                                        /s/
                                    Suzanne V. Suher Katchmar
                                    Virginia State Bar No. 37387
                                    Attorney for Brady Beck Fant
                                    Assistant Federal Public Defender
                                    Office of the Federal Public Defender
                                    150 Boush Street, Suite 403
                                    Norfolk, Virginia 23510
                                    Telephone: (757) 457-089
                                    Facsimile: (757) 457-0880
                                    suzanne_katchmar@fd.org